# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1837-23

NEW JERSEY DIVISION OF
CHILD PROTECTION AND
PERMANENCY,

     Plaintiff-Respondent,

v.

J.S.,

     Defendant,

and

A.S.,

     Defendant-Appellant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF
W.S. and P.S., minors.

_____

Submitted January 23, 2025 – Decided February 10, 2025

Before Judges Rose and DeAlmeida.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Hunterdon County, Docket No. FG-10-0102-23.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Steven Edward Miklosey, Designated Counsel, on the brief).

Matthew J. Platkin, Attorney General, attorney for respondent (Donna Arons, Assistant Attorney General, of counsel; Nicholas Dolinsky, Deputy Attorney General, on the brief).

Jennifer N. Sellitti, Public Defender, Law Guardian, attorney for minors (Meredith Alexis Pollock, Deputy Public Defender, of counsel; David B. Valentin, Assistant Deputy Public Defender, of counsel and on the brief).

PER CURIAM

Defendant A.S. (Adam) appeals from a January 31, 2024 Family Part judgment terminating his parental rights to his biological sons, W.S. (William), born in 2018, and P.S. (Peter), born in 2020.[1] The same judgment terminated the parental rights of the children's biological mother, defendant J.S. (Jessica), who did not attend the guardianship proceedings, has been missing to the

---

[1] Consistent with the parties' briefs, we use initials to protect the confidentiality of these proceedings, R. 1:38-3(d)(12), and pseudonyms for ease of reference.

Division of Child Protection and Permanency since June 2022, and is not a party to this appeal.[2]

During the three-day guardianship trial, the Division presented the testimony of two permanency caseworkers, an adoption worker, and psychology expert, Robert Kanen, Psy.D. The boys' resource parent, L.T. (Lana), testified on behalf of William and Peter. Defendant neither testified nor presented any evidence on his behalf.

Following closing arguments, Judge Bernadette DeCastro reserved decision and shortly thereafter issued a twenty-six-page written decision, finding the Division established, by clear and convincing evidence, all four prongs of the best interests standard under N.J.S.A. 30:4C-15.1(a)(1) to (4). Accordingly, William and Peter were freed for adoption by Lana, with whom the boys have resided since January 2023.[3]

---

[2] Jessica has four other biological children: A.M. and V.M., who are over the age of eighteen and were last known to reside with their biological father, J.M; and D.R. and B.R., who are minors and were last known to be in the custody of their biological father, M.R. These children and their fathers are not parties to this appeal.

[3] After Adam filed his appeal, we granted his motion to settle the record regarding the admission of certain trial evidence. On remand, the judge resolved the outstanding evidentiary issues and issued a June 24, 2024 memorializing order, which is not challenged on this appeal.

A-1837-23

Before us, Adam's contentions are limited to the second part of the statute's third prong, whether the Division satisfied its burden to explore alternatives to termination, and fourth prong, whether termination of parental rights "will not do more harm than good." N.J.S.A. 30:4C-15.1(a)(3) and (4). The children's law guardian joins the Division, urging us to uphold the judgment.

Based on our review of the trial record and prevailing legal standards, we are satisfied the evidence in favor of the guardianship petition overwhelmingly supports the judge's decision to terminate Adam's parental rights, see N.J. Div. of Youth & Fam. Servs. v. M.M., 189 N.J. 261, 279 (2007), and there is no merit to the claims Adam raises on appeal. We affirm substantially for the reasons stated by Judge DeCastro in her cogent written opinion.

Accordingly, we need not detail the complete history of the Division's involvement in this matter. Instead, we incorporate by reference Judge DeCastro's thorough factual findings and legal conclusions, highlighting the pertinent facts and events from the evidence adduced at trial.

The Division first became involved with the family in December 2018, following allegations of domestic violence. William was three months old at the time of the referral; Peter was not yet born. The case was closed at intake.

A second referral in February 2019, spurred the Division's reinvolvement based on allegations that Jessica appeared intoxicated in court while seeking a restraining order against Adam's former romantic partner. The Division was granted care and supervision of William. Because defendants failed to comply with services, Jessica's mother was granted physical custody of William. In September 2019, based on defendants' progress and compliance with the Division's services, William was reunited with his parents. In January 2020, the litigation was dismissed and the Division closed its file.

By March 2021, however, the Division was reinvolved with the family following a referral indicating: defendants were intoxicated while caring for William, then age two, and Peter, then age one; Jessica physically assaulted Adam; and the home was unkempt. The Division investigated and the case remained open for monitoring.

Over the course of the next several months, the Division received multiple referrals reporting domestic violence and substance abuse. In November 2021, the Division was granted care and supervision of the children. The Division provided various services. Jessica obtained a final restraining order (FRO) against Adam. Eventually, on April 4, 2022, the Division closed its case as Jessica was complying with services and she and the children resided with her

A-1837-23

friend. The dismissal order permitted Adam to seek modification of the FRO to resume parenting time with the boys.

The precipitating event that led to the children's removal occurred on April 6, 2022, two days after dismissal of the litigation, when Jessica was hospitalized after a manic public incident. At the hospital, Jessica tested positive for benzodiazepine and methamphetamines. Pursuant to the Division's safety protection plan, the children lived with Jessica's niece, C.M. (Cara) in Pennsylvania. The following month, the Division was awarded care and custody of the children.

Adam failed to maintain regular contact with the Division. When he finally met with the caseworker in late August 2022, Adam stated he wished to visit the boys, but acknowledged he could not care for the children because he did not have stable housing or a job. Again, the caseworker advised Adam he could not visit the children absent modification of the FRO.

During the months that followed, Adam disclosed his schizophrenia illness to the Division, explaining he heard voices and hallucinated. The Division offered Adam various services. Although Adam had a housing voucher, he lived in a hotel. Neither the services offered nor Adam's noncompliance is at issue on this appeal.

6                                                                                          A-1837-23

Meanwhile, by November 2022, Cara informed the Division she could no longer care for the children. The Division placed the children with Cara's mother, D.M. (Dara), in December 2022, but Dara soon asked for their removal. The following month, William and Peter were placed with Lana, who babysat the children when they resided with Cara.

At trial, a caseworker and the adoption worker testified they separately spoke with Lana about permanency options for the children, including kinship legal guardianship (KLG) and adoption. Both times, Lana expressed her preference for adoption. Lana reiterated her commitment to adoption during her trial testimony. Noting the children were bonded to her and her family, Lana stated "[she] would like to give them a forever home."

Dr. Kanen testified about his bonding assessments of the children with Adam, and with Lana. Dr. Kanen noted the interactions between Adam and the children were positive, but concluded the boys had an insecure attachment to their father. Noting Adam's visits with the boys were inconsistent, Dr. Kanen found they could not rely on him. Dr. Kanen opined Adam was unable to provide the children with a safe and secure home.

Conversely, Dr. Kanen concluded the bond between the boys and Lana was secure. Noting one of the children called Lana, "mommy," Dr. Kanen

7

concluded the boys "perceive her as a parental figure." Because Lana is "consistent, predictable, reliable," and "recognizes their special needs," Dr. Kanen opined she is able to provide the boys stability and security. According to Dr. Kanen, the boys would not "suffer severe and enduring harm if [Adam]'s parental rights [we]re terminated."

We are guided by well-established principles. Termination of parental rights requires the Division satisfy the following four prongs of the "best interests of the child" test by clear and convincing evidence:

> (1)  The child's safety, health, or development has been or will continue to be endangered by the parental relationship;
>
> (2)  The parent is unwilling or unable to eliminate the harm facing the child or is unable or unwilling to provide a safe and stable home for the child and the delay of permanent placement will add to the harm;
>
> (3)  The [D]ivision has made reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home and the court has considered alternatives to termination of parental rights; and
>
> (4)  Termination of parental rights will not do more harm than good.
>
> [N.J.S.A. 30:4C-15.1(a)(1) to (4).]

A-1837-23

The four prongs "are not discrete and separate," but rather "relate to and overlap with one another to provide a comprehensive standard that identifies a child's best interests." In re Guardianship of K.H.O., 161 N.J. 337, 348 (1999).

In his first two overlapping arguments, Adam challenges the adequacy of the judge's findings on the second part of the third prong, "the court has considered alternatives to termination of parental rights." N.J.S.A. 30:4C-15.1(a)(3). For the first time on appeal, Adam argues the judge gave short shrift to the Division's investigation of his relative placement options and its failure to introduce into evidence the "rule out" letters to his stepfather and brother. Adam further contends the judge erroneously deferred to Lana's preference to adopt rather than pursue KLG.

Because Adam failed to raise an objection to the adequacy of the Division's proofs at trial concerning the exploration of his relatives without introducing the rule out letters, we review his belated contentions under the plain error standard. R. 2:10-2. He therefore bears the burden of demonstrating the alleged error was "of such a nature as to have been clearly capable of producing an unjust result," and therefore, should not be disregarded by this court. Ibid.

Had an objection been made, the Division could have addressed the omission at trial. See N.J.S.A. 30:4C-12.1(b)(1) (requiring the Division to

9

"inform the relative or person in writing of . . . the reasons for [its] determination").  Regardless, however, the adoption worker testified during his "tenure of the case [Adam] did not want the Division to relook at any of his family members, specifically [his stepfather and brother]."  Moreover, the record reveals Adam told behavioral healthcare workers his stepfather abused him as a child and he did not have a relationship with his brothers, who had substance abuse issues.

Thus, even if the Division failed to issue a rule out letter, that failure would not warrant jeopardizing the safety of the children or their entitlement to permanency without further delay.  See N.J. Div. of Youth & Fam. Servs. v. K.L.W., 419 N.J. Super. 568, 581 (App. Div. 2011) ("Delay of permanency or reversal of termination based on the Division's noncompliance with its statutory obligations is warranted only when it is in the best interests of the child.").  We are satisfied any error was not "of such a nature as to have been clearly capable of producing an unjust result."  R. 2:10-2.

Nor are we persuaded Judge DeCastro failed to consider KLG as an alternative to termination of Adam's parental rights.  Notably, at the guardianship trial, Adam did not propose KLG.  He sought dismissal of the guardianship complaint arguing the Division failed to satisfy all four prongs of

10

the best interests standard. Defendant now argues the judge's decision violated the legislative mandate favoring KLG. We disagree.

Effective July 2021, the Legislature amended the kinship care statutory framework by enacting L. 2021, c. 154. Recognizing the importance of supporting kinship care and the benefits of retaining the parent-child relationship, the amendments relaxed the qualification requirements for KLG. However, the amendments only revised the second prong of N.J.S.A. 30:4C-15.1(a)(2) by eliminating language that permitted the court to consider the harm separating the child from their resource family parent would cause to the child. Prongs three and four were not altered by the 2021 amendments. See N.J. Div. of Child Prot. & Permanency v. D.C.A., 256 N.J. 4, 28 (2023) (holding the 2021 amendments do not bar evidence of a child's bond to a current placement under the fourth prong).

Accordingly, there is no statutory bar prohibiting the court from granting KLG instead of adoption when the caregiver prefers adoption and the Division otherwise proves termination of parental rights is in the child's best interests. The record supports Judge DeCastro's finding that Lana was informed KLG was an option and elected to adopt William and Peter in view of her concerns for the children's stability. We discern no basis to disturb that decision.

11

In his final point, Adam argues the trial judge afforded improper weight to Dr. Kanen's conclusion the children would not suffer enduring harm if his parental rights were terminated. Asserting Dr. Kanen overlooked the visitation reports, Adam claims the children clearly were attached to him. Adam's contentions lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). We simply note even if Dr. Kanen did not consider the visitation reports, Judge DeCastro did so, noting the children "recognized and seemed to enjoy spending time" with Adam, but ultimately crediting Dr. Kanen's opinion that their attachment was "insecure."

We conclude Judge DeCastro's factual findings are fully supported by the trial record and her legal conclusions are unassailable, warranting our deference. N.J. Div. of Youth & Fam. Servs. v. R.G., 217 N.J. 527, 552 (2014). The judge's opinion tracks the statutory requirements of N.J.S.A. 30:4C-15.1(a), and accords with K.H.O., 161 N.J. 337, and its progeny.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1837-23